UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH PLATTER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-2012 |
| | § | |
| G FORCE CEMENT WORKS, L.L.C. AND GLEN R. BONDS, | § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Kenneth Platter's ("Platter") renewed motion for default judgment against defendants G Force Cement Works, L.L.C. ("G Force") and Glen Bonds ("Bonds"). Dkt. 13. Having considered the motion, the evidentiary record, and the applicable law, the court finds that the motion should be GRANTED.

**I. BACKGROUND**

On September 10, 2019, Platter filed a motion for default judgment against defendants under the Fair Labor Standards Act ("FLSA"), alleging damages for unpaid overtime wages, liquidated damages, attorney's fees, and costs. Dkt. 11. The court denied the motion as to Bonds because Platter had "not submitted an affidavit attesting to Bonds's military status, as required by 50 U.S.C.A. § 3931(b)(1)." Dkt. 12 at 3. Furthermore, the court deemed default judgment "improper as to both defendants for another reason: Platter fail[ed] to state a claim under the FLSA." *Id*. at 3–4. Platter offered "no facts beyond his employment as a truck driver" to establish individual coverage, and he offered "no facts to support the conclusion that he was covered under the FLSA's 'enterprise

coverage'" besides a "formulaic recitation" of G Force's business size. *Id.* at 5. The court denied Platter's motion without prejudice. *Id.*

On November 26, 2019, Platter filed a renewed motion for default judgment against defendants. Dkt. 13. In his declaration, Platter now attests he is unable to determine whether Bonds is in military service. Dkt. 13-1 ¶ 8. Platter continues to allege he worked as a driver for G Force from March 2018 until May 5, 2019, and was paid an hourly rate of $17.00–$19.00. *Id.* ¶ 2. In addition, Platter now attests that throughout his employment "with the Defendants, the Defendants typically operated five to seven mixer trucks" that were exclusively International and Volvo brands and operated by at least four employees. *Id.* ¶ 5(d)–(f). He further alleges that G Force has approximately $4,446,000.00 in gross yearly business and that he personally delivered at least $1,197,000.00 worth of cement on behalf of defendants during the relevant time period. *Id.* ¶ 5(j)–(l).

Platter claims that, in fourteen separate weeks during his employment with G Force, he worked more than forty hours each week, but was not paid compulsory FLSA overtime wages. *Id.* ¶ 4. Platter asks for unpaid overtime wages totaling $1,600.69, as well as liquidated damages for the same amount. Dkt. 13 at 10–11. Platter also asks for reasonable attorney's fees and costs totaling $3,080.00. *Id.* at 16. The damages Platter seeks, including attorney's fees and costs, amount to $6,281.38. *Id.*

## II. LEGAL STANDARD

A default judgment is a "drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted). "The plaintiff must submit evidence supporting that the defendant has been properly served with the summons, complaint, and the default judgment

2

motion." *Gonzalez v. Port Packaging, L.L.C.*, No. H-18-3327, 2019 WL 3216921, at *2 (S.D. Tex. July 16, 2019) (Rosenthal, C.J.) (citing *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. 16-CV-463, 2018 WL 4688778, at *3 (W.D. Tex. July 5, 2018)). Under the Service Members Civil Relief Act ("SCRA"), the plaintiff must either file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit," or file an affidavit "stating that the plaintiff is unable to determine whether or not the defendant is in military service." 50 U.S.C.A. § 3931(b)(1). Finally, motions for default judgment must "be served on the defendant-respondent by certified mail (return receipt requested)." S.D. Tex. LR 5.5.

On a motion for default judgment, the plaintiff's well-pleaded allegations are assumed to be true. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Thomson v. Wooster*, 114 U.S. 104, 5 S. Ct. 788 (1885)). "For the court to enter default judgment, the complaint must satisfy Federal Rule of Civil Procedure 8." *Gonzalez*, 2019 WL 3216921, at *2 (citing *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497–98 (5th Cir. 2015)). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 573, 127 S. Ct. 1955 (2007)). The pleadings must be sufficient to have "nudged [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

#### A. Platter Has Complied with the SCRA

The court denied Platter's original motion as to Bonds because Platter had "not submitted an affidavit attesting to Bonds's military status, as required by 50 U.S.C.A § 3931(b)(1)." Dkt. 12 at 3. Platter has now submitted a declaration attesting that he is "unable to determine whether or not

3

Defendant, Glen R. Bonds, is in military service." Dkt. 13-1 ¶ 8. Accordingly, Platter has complied with the SCRA. 50 U.S.C.A. § 3931(b)(1)(B).

### B. Platter Is Entitled to Relief Under the FLSA

"An FLSA unpaid overtime claim requires that: (1) an employer-employee relationship existed during the claimed unpaid overtime periods; (2) the employee was involved in activities within FLSA coverage; (3) the employer violated the overtime wage requirement; and (4) the amount of overtime compensation owed." *Gonzalez*, 2019 WL 3216921, at *3 (citing *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)). "[T]he FLSA mandates minimum wage and overtime compensation for employees who are: (1) 'engaged in commerce or in the production of goods for commerce' (individual coverage) or (2) 'employed in an enterprise engaged in commerce or in the production of goods for commerce' (enterprise coverage)." *Landeros v. Fu King, Inc.*, 12 F. Supp. 3d 1020, 1022 (S.D. Tex. 2014) (Crane, J.) (quoting 29 U.S.C. §§ 206(a), 207(a)). Plaintiff may invoke FLSA protection by "[e]ither individual *or* enterprise coverage." *Id.* (emphasis in original) (quoting *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992)).

#### 1. Employee-Employer Relationship

The employer test "considers whether the alleged employer '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)). In his declaration, Platter states that defendants "hired [him], determined and controlled [his] rate and method of pay, controlled and dictated [his] work schedule, and [were] in total control of the terms and conditions of [his] employment." Dkt. 13-1 ¶ 6. These allegations are sufficient to establish an employee-employer relationship.

## 2. FLSA Coverage

### a. Individual Coverage

To determine whether individual coverage applies, the Fifth Circuit applies a "practical test" that asks whether "'the [employee's] work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324, 80 S. Ct. 739 (1960)); *see also Shorts v. Primeco Auto Towing, L.L.C.*, No. H-13-2794, 2014 WL 3670004, at *2 (S.D. Tex. July 22, 2014) (Miller, J.) (clarifying the need for a "direct and substantial involvement with interstate commerce" to establish individual coverage). It is not "enough that an employee's work merely 'affects' interstate commerce in some way." *Mendoza v. Detail Sols., LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012) (quoting *Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 850 (5th Cir. 1967)).

Here, Platter alleges that he was "at all times material[ly and] individually engaged in commerce as his work was directly related to the movement [of] products and information in interstate commerce." Dkt. 13 at 3. This is nothing more than a conclusory assertion and does not prove individual coverage. *See Twombly*, 550 U.S. at 555 (stating that "'entitle[ment] to relief' requires more than labels and conclusions") (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)). Platter further alleges he maintained and transported concrete in cement mixer trucks that had traveled through interstate commerce, but does not show how his personal activities constitute a substantial involvement with interstate commerce, let alone affect it. Dkt. 13 at 8–9. The only fact in the record about the nature of G Force's involvement in interstate commerce is a reference to large development projects without mention of where they are located. *Id.* at 4.

Platter's motion does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, Platter has not sufficiently pled individual coverage.

### b. Enterprise Coverage

Under the FLSA:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise an enterprise that--
>
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, *or* that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; *and*
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203 (s)(1) (emphasis added). The first prong of enterprise coverage can either be met "(1) through the 'engaged in commerce' clause, which tracks the language used to determine individual coverage and can be analyzed in essentially the same manner; or (2) the 'handling' clause, which requires separate analysis." *Landeros*, 12 F. Supp. 3d at 1023 (quoting *Mendoza*, 911 F. Supp. 2d at 439–40).

Platter claims that, at all times, G Force "was an enterprise engaged in interstate commerce, operating a business engaged in commerce or in the production of goods for commerce." Dkt. 13 at 2. As in the individual coverage analysis, Platter's allegations of G Force's relation to interstate commerce are merely a "formulaic recitation of the elements" of FLSA enterprise coverage, which are insufficient to state a claim. *See Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). Consequently, Platter fails to sufficiently plead enterprise coverage under the commerce prong. However, Platter sufficiently alleges enterprise coverage under the handling prong.

The handling clause provides enterprise coverage for an employer "if it has employees (not necessarily the plaintiffs) 'handling, selling, or otherwise working on *goods or materials* that have

6

been moved in or produced for commerce by any person.'" *Landeros*, 12 F. Supp. 3d at 1023–24 (emphasis in original) (quoting 29 U.S.C. § 203 (s)(1)(A)(i)). The employer must regularly have "at least two or more employees engaged in such activities." 29 C.F.R. § 779.238. The clause "'was designed to regulate enterprises dealing in articles *acquired intrastate* after travel in interstate commerce.'" *Polycarpe v. E & S Landscaping Serv. Inc*, 616 F.3d 1217, 1221 (11th Cir. 2010) (emphasis in original) (quoting *Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1030 (5th Cir. 1973)). However, the definition of goods "does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203 (i). An item may be classified as "'materials' if it accords with the definition of 'materials'—tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees 'handling, selling, or otherwise working on' the item for the employer's commercial (not just any) purposes." *Polycarpe*, 616 F.3d. at 1227. The term "materials" does not require consideration of whether the employer is the ultimate consumer. *Landeros*, 12 F. Supp. 3d at 1024 (citing *Polycarpe*, 616 F.3d at 1222).

Platter asserts that his principle job duties included driving and maintaining cement mixer trucks. Dkt. 13-1 ¶ 5(a). Platter's motion does not clarify whether a cement mixing truck is a good or a material, but the court construes his motion as making an argument for both. Here, the cement mixer trucks cannot be classified as a good because G Force is the ultimate consumer. G Force does not fall within any exception because it is not a producer, manufacturer, or processor of cement mixer trucks. However, a truck can fall under the definition of materials. *See Sec'y of Labor v. Timberline S., LLC*, 925 F.3d 838, 848 (6th Cir. 2019) (finding that logging and harvesting equipment falls under the definition of materials); *see also White v. NTC Transp., Inc.*, No. 4:11CV007-SA-JMV, 2013 WL 5430512, at *6 (N.D. Miss. Sep. 27, 2013) (finding that "the

vehicles used in the performance of transporting non-emergency patients to appointments in the course of Defendants' business are 'materials'"). Because the trucks are tools necessary for making concrete, which is crucial to G Force's commercial purpose of providing cement to businesses, they are materials under the FLSA.

Platter asks the court to take judicial notice of the fact that these cement mixer trucks were not produced in Texas. Dkt. 13 at 8. A court may take judicial notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Here, Platter provides links to the official websites of both Volvo and Navistar, the maker of International trucks. Dkt. 13 at 8. The court takes judicial notice of the fact that these cement mixer trucks were not produced in Texas and thus have traveled through interstate commerce. *See Dunphy v. Project Aristocrat Life Found.*, No. CV H-17-1225, 2019 WL 6069184, at *7 (S.D. Tex. Nov. 15, 2019) (Lake, J.) (taking judicial notice of the origin of famous foreign made liquors to infer they must have traveled in interstate commerce). Platter further asserts that there were at least four cement truck drivers at the time of his employment. Dkt. 13-1 ¶ 5(f). This satisfies the requirement that an employer must have at least two or more employees regularly handle the materials. 29 C.F.R. § 779.238.

In order for a business to fall under enterprise coverage, it must have an annual gross volume of sales made or business done of at least $500,000. 29 U.S.C. § 203 (s)(1)(A)(ii). Platter states in his declaration that G Force supplied and delivered an average of 900 yards of concrete per week to its customers and calculates the annual business done by G Force to be approximately $4,446,000.00. Dkt. 13-1 ¶ 5(j). During the fourteen weeks he claims he was not paid overtime, he calculates he personally delivered at least $1,197,000.00 of concrete. *Id.* ¶ 5(l). Accordingly, Platter has shown that G Force meets the annual gross volume requirement. Because Platter has established that the

cement trucks he drove were "materials" and has pleaded the requisite adjusted gross volume of sales for G Force, Platter has successfully alleged enterprise coverage under the "handling of materials" prong of the FLSA.

### 3. Violation of Overtime Wage Requirement & Overtime Compensation Owed

The FLSA mandates an employer must pay its employee a rate not less than one and one-half times the regular rate at which he is employed if he is engaged in a workweek longer than forty hours. 29 U.S.C. § 207 (a)(1). Platter asserts that he was employed by G Force from March of 2018 through May 5, 2019, and was paid an hourly rate of $17.00–$19.00. Dkt. 13-1 ¶ 2. He alleges that he was paid only his normal wages for the fourteen weeks he worked overtime and was not paid an overtime rate in any week. *Id.* ¶ 3. After examining Platter's affidavit and his time sheets, along with his allegations that he was not paid FLSA's overtime pay, the court finds that defendants owe Platter $1,600.70 for these fourteen weeks. *Id.* ¶ 3.

| Week Ending in: | Total Hours Worked: | Hourly Rate: | Overtime Hours Worked: | Additional Pay for Overtime: | Overtime Owed: |
|---|---|---|---|---|---|
| Mar. 29, 2018 | 45.76 | $17.00 | 5.76 | $8.50 | $48.96 |
| Apr. 12, 2018 | 63.31 | $17.00 | 23.31 | $8.50 | $198.14 |
| Apr. 19, 2018 | 57.39 | $17.00 | 17.39 | $8.50 | $147.82 |
| Apr. 26, 2018 | 48.28 | $17.00 | 8.28 | $8.50 | $70.38 |
| May 5, 2018 | 62.79 | $17.00 | 22.79 | $8.50 | $193.72 |
| May 17, 2018 | 50.32 | $18.00 | 10.32 | $9.00 | $92.88 |
| May 31, 2018 | 47.64 | $18.00 | 7.64 | $9.00 | $68.76 |
| Jun. 14, 2018 | 54.72 | $18.00 | 14.72 | $9.00 | $132.48 |
| July 19, 2018 | 66.69 | $18.00 | 26.69 | $9.00 | $240.21 |
| Aug. 2, 2018 | 52.34 | $18.00 | 12.34 | $9.00 | $111.06 |
| Aug. 23, 2018 | 49.82 | $18.00 | 9.82 | $9.00 | $88.38 |
| Nov. 29, 2018 | 43.03 | $18.00 | 3.03 | $9.00 | $27.27 |
| Jan. 17, 2019 | 56.25 | $18.00 | 16.25 | $9.00 | $146.25 |
| Feb. 14, 2019 | 43.62 | $19.00 | 3.62 | $9.50 | $34.39 |

| Total Overtime Owed | $1,600.70[1] |
|---|---|

### C. Liquidated Damages

Under the FLSA, an employer who violates the minimum wage or overtime requirements "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The employer may persuade the court that the acts or omissions giving rise to the case were performed in good faith and they reasonably believed their actions were not violations of the FLSA in order to reduce or eliminate liquidated damages. 29 U.S.C. § 260. However, "a district court may not exercise its discretionary authority to reduce or eliminate a liquidated damage award unless the employer sustains 'the substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith . . . and predicated upon . . . reasonable grounds.'" *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993) (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)). Because defendants have defaulted, they cannot rebut Platter's claims that the overtime violations were willful, therefore the court awards liquidated damages in the amount of $1,600.70. Actual and liquidated damages total $3,201.40.

### D. Attorney's Fees & Costs

Under the FLSA, a prevailing plaintiff is entitled to an award of reasonable attorney's fees and costs in any enforcement proceeding. 29 U.S.C. § 216(b). In determining reasonable attorney's fees, the Fifth Circuit uses the lodestar analysis, which is the product of reasonable hours times a reasonable rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citations

---

[1]Although Platter asks for $1,600.69, the amount of overtime pay totals $1,600.70

omitted). Platter requests attorney's fees and costs of $3,080.00. Dkt. 13 at 16. Platter's attorney, Charles Scalise, has submitted a declaration attesting to both his and his paralegal's qualifications. Dkt. 13-2 ¶ 3–4. The declaration includes an itemized report of the hours Scalise spent with his paralegal on the case and their respective hourly wages. *Id*. Scalise's declaration also includes fees related to this case, including $247.50 in service fees and $400.00 in filing fees. *Id.* ¶ 7. Scalise's declaration and supporting documents support a conclusion that Platter's requested fees and costs are reasonable and necessary. The court will award $2,432.50 in attorney's fees and $647.50 in fees related to the case, for a total of $3,080.00.

## IV. CONCLUSION

Platter's renewed motion for default judgement is GRANTED as to defendants G Force and Bonds. Final judgment is entered against G Force Cement Works, L.L.C. and Glen Bonds in the amount of $6,281.40.

Signed at Houston, Texas on March 16, 2020.

_____
Gray H. Miller
Senior United States District Judge